## MATTHEWS *v.* WARNER and others.

*(Circuit Court, D. Massachusetts. March 1, 1881.)*

1. MORTGAGOR — SEPARATION OF NOTES FROM MORTGAGE — EQUITABLE RELIEF.

     A mortgagor is not entitled to relief in equity upon the ground that the mortgage has been separated from the outstanding and unpaid notes which it was given to secure.

2. USURY—EQUITABLE RELIEF.

     One who seeks relief in equity upon the ground of usury must first offer to repay the money actually lent.

3. SAME—SAME—FOREIGN STATUTE.

     A statute of New York, which authorizes a borrower to obtain a cancellation of securities without payment, upon the ground of usury, cannot bind a court of equity, out of the state, in dealing with a bond and mortgage made and delivered within the state.

4. HUSBAND AND WIFE — BONDS IN NAME OF WIFE — INTEREST OF HUSBAND.

5. FRAUD—MORTGAGE—ASSIGNEE WITHOUT NOTICE.—[ED.

In Equity.

*W. A. Abbott* and *J. S. Abbott*, for complainant.

*E. R. Hoar* and *J. B. Warner*, for defendants.

LOWELL, C. J. This bill, filed in December, 1877, alleges that the plaintiff, Virginia B. Matthews, of New York, was, on the first of January, 1877, and for a long time before and after, the owner of 150 bonds of the Memphis & Little Rock Railroad, and of 50 bonds of the Carolina Central Railroad, of $1,000 each, giving the numbers; that they were her separate property; that some person to her unknown, and without her consent, authority, or knowledge, placed these bonds in the hands of Warner & Smith, of Boston, the defendants; that Warner & Smith, as the plaintiff is informed and be-

lieves, claim to hold the bonds as lawfully pledged to them to secure some debt or demand to her unknown, and intend to sell them at auction; that the defendants sometimes claim that the bonds were pledged to them by the plaintiff's husband, Edward Matthews; but, if so, he had no authority so to pledge them, and that the defendants, when they received the bonds, knew that they were her property; and that if these bonds were so received by the defendants it was without consideration, or upon a contract void in law; that the defendants have refused to surrender the bonds to the plaintiff.

The defendants answered that they held a bond of Edward Matthews for $250,000, secured by mortgage upon real estate in the city of New York, as security for the notes of Nathan Matthews, a brother of Edward, exceeding $200,000; that Edward was desirous of obtaining a surrender of this bond and mortgage, and delivered to them the railroad bonds, March 6, 1877, in consideration of such surrender. They state fully the circumstances of this transaction, and annex to their answer a written agreement between them and Nathan and Edward Matthews concerning the same. They allege that Edward Matthews is the real party plaintiff, and that the title of Virginia B. Matthews is nominal and colorable.

The plaintiff amended her bill, and set up the same facts in respect to the exchange of the railroad bonds for the bond and mortgage which had been stated in the defendants' answer, and averred that the bond and mortgage were given as security for certain notes of Edward Matthews which were void for usury by the laws of New York, where they were delivered and negotiated; that the defendants held the bond and mortgage as trustees for one Thomas Upham and his creditors; that before the agreement for the exchange was made, Nathan Matthews falsely represented to Edward that Thomas Upham, or the defendants, held $200,000 of the notes of Edward, for which the bond and mortgage were given as collateral; that, when the exchange was made, the defendants and their attorney falsely made a similar statement; whereas, in fact, Upham and the defendants, as his trustees, held the bond and mortgage as security for the notes

of Nathan, only excepting one note, of $5,000, which had been indorsed by Edward for the accomodation of Nathan, which was not one of the notes intended to be secured by said bond and mortgage; that Edward was induced by these false representations to assent to the transfer of the bond and mortgage to Upham, and to the exchange of the railroad bonds for this original security. It repeats that the whole transaction was void for usury, and adds that the mortgage had become of no value (meaning by the depreciation of real estate) before the exchange was made. To the amended bill an appropriate answer was filed, denying fraud and knowledge, and insisting on the validity of the transaction.

The evidence tends to show that the bonds in controversy were, at one time, the property of Edward Matthews, and, excepting 50 per cent. of the Memphis & Little Rock bonds, the title to which is not traced, were a part of a larger number by him assigned to his brother, Watson Matthews, in trust for Mrs. Matthews, his wife, the now plaintiff, as security for an indebtedness, the amount of which is not stated, of the husband to the wife, and that they were afterwards sold at auction by the trustee, and bought in by J. Brandon Matthews, the plaintiff's son, for her account. All this time the bonds were in the hands of pledgees, and there was no delivery of them to Mrs. Matthews, and no notice to the holders, but the transfers were on paper only. Afterwards, by some person unknown, a part of the Carolina Central bonds were redeemed, and were put in the safe of a deposit company which was hired by Mrs. Matthews, and of which she and her son had keys, but her husband had none. Other bonds were placed in the same safe from time to time. Whenever Edward Matthews wished to sell or pledge any of these bonds he did so, his son furnishing them on demand. Others were afterwards substituted, and then again used as Edward's occasions might require, and so on.

Where the money came from that Edward had borrowed of his wife does not appear, and there is no evidence that the bonds were her separate property, except as that is to be inferred from the general statement that they were hers.

Mrs. Matthews was not examined as a witness. Books which were kept for her by the clerk of Mr. Matthews are not produced. The witnesses, except to the paper title, are Edward Matthews and his son, who, having given these bonds to the defendants, testify that they had no authority to do so.

It was not seriously denied, in the argument of the counsel who closed the case, that the facts show full authority for Edward Matthews to deal with all the bonds in his wife's safe as he chose; nor could it be denied with any hope of success. It seems, then, that the witnesses who testified to the want of authority must have intended to say merely that there was no express authority. There was as much right to take the bonds out of the safe as there ever was to put them in.

To my mind the evidence proves more than a right by Edward to use the bonds. It proves that they were his for all purposes for which he chose to use them. The case, therefore, must be decided upon the amended bill, which alleges that, considered as a contract and dealing with Edward Matthews himself, the defendants have no title. The contention from this point of view is that Edward Matthews was induced by the fraud of his brother to consent, as he did consent, in writing, to the assignment of the bond and mortgage to Upham, and that Upham had knowledge of the fraud; or that the mortgage was void because it was given to secure notes tainted with usury; or that, being given to secure certain notes, it was of no value when separated from them. It is clear that Upham had lent a great deal of money to Nathan Matthews, and that he held valuable securities for its repayment, which he surrendered in exchange for the bond and mortgage of Edward Matthews; and that he had no notice or knowledge of any dealings between the brothers which would injuriously affect his title. Upon the preponderance of evidence I find that Edward made the mortgage with knowledge that it was to be used to secure whatever debts Nathan owed Upham; or that it was so made and assigned that Upham had, as against Edward, the right to believe so.

The alleged fraud does not attack the mortgage itself, but

only the assignment of it to Upham. It was given, according to this theory, to secure certain notes, and the fraud consisted in a false statement that Nathan would assign with it a corresponding amount of the notes; whereas, he, in fact, negotiated those notes to other persons, thus creating a double liability. But the mortgage itself, having been lawfully given for the notes, unless avoided by usury, stands as their security. Edward Matthews is in bankruptcy, and the notes are still outstanding, unpaid, to a greater amount than $200,-000. Therefore, the only persons who can at present complain that the mortgage has been separated from the notes are the holders of them. Neither Edward Matthews nor his wife have an equity apart from these holders; and, if they can maintain a bill, can only do so by making these persons parties, and by asking for a wholly different relief from that which the plaintiff now asks.

Were the bond and mortgage wholly void, from the beginning, for usury? If they were, I should incline to think Edward Matthews estopped to show it; but, at all events, one who asks relief in equity on this ground, must first offer to repay the money actually lent. As a general proposition this is admitted; but there is a statute in New York which authorizes the borrower to obtain such a surrender, in equity, without payment. This statute is so strictly construed that it has been held not to apply to an assignee in bankruptcy of the borrower, (*Wheelock* v. *Lee*, 15 Abb. Pr. [N. S.] 64; S. C. 64 N. Y. 242;) nor to a purchaser of an equity of redemption of land upon which there is an usurious mortgage, (*Bissell* v. *Kellogg*, 65 N. Y. 432.) It seems to me, however, that if a borrower pledges the property of a third person for his debt, that person must be so far identified with the borrower as to have all his rights at law and in equity. If I say that Mrs. Matthews is only a nominal holder for her husband, bound by his obligations in respect to the property, how can I refuse her the same rights which he would have to the same property? However this may be, the statute of New York, which authorizes a borrower to obtain a cancellation of securities without payment, cannot bind a court of equity out of the

state, and does not undertake to do so. When a borrower comes into equity in Massachusetts, or in the circuit court, he must do equity, as understood by the court in which he sues. If, then, the defendants held the notes for which the bond and mortgage are said to have been given, and if they were so given, there could be no redemption without payment.

For these reasons the complainant is not entitled to the relief which she seeks. Bill dismissed, with costs.